UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GABRIEL PLASCENCIA and
ALEJANDRO ASTIAZARAN,

　　　　　　　Plaintiffs,

　　　　v.

JAMES McDANIEL, JANE DOE
McDANIEL; and their marital community;
DAVID CALLAHAM, JANE DOE
CALLAHAM, and their marital community;
and ROSE MANOR, INC.,

　　　　　　　Defendants.

Case No. C08-5453 RJB

ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

　　　　This is an action for breach of fiduciary duty, breach of contract, and piercing the corporate

veil.  Defendants David Callaham and Rose Manor, Inc. move the Court for a summary judgment of

dismissal.  The Court, having reviewed the pleadings and record herein, is fully informed and

**DENIES** the motion for summary judgment for the reasons stated herein.

## Introduction and Background

　　　　In January 1997, Defendants David Callaham and James McDaniel, Plaintiff Alejandro

Astiazaran, and others formed a California limited liability company known as Kalm Group

Holdings, LLC.  Mr. Callaham contributed a real property interest identified as the southwest

ORDER - 1

1    quadrant of State Route 502 and State Route 503," Battleground, Washington (Battleground

2    property), to the Kalm Group.  In March or April of 1999, the Kalm members determined that the

3    Battleground property would be removed from the Kalm's balance sheet and returned to an entity

4    known as Rose Manor Properties.  The record reflects that McDaniel held himself out as President of

5    Rose Manor Properties and that Callaham had authority to conduct business on behalf of Rose Manor

6    Properties.

7         Contemporaneously with the transfer of the Battleground property to Rose Manor

8    Properties,  Plaintiff Astiazaran entered into a Partnership Agreement with Callaham, McDaniel,

9    and others.  The partnership agreement was entered into for the sole purpose of selling the

10   Battleground property and dividing the proceeds of the sale among the partners.

11        The Partnership Agreement provides that "[t]he Battleground property shall be retained in

12   the ownership of Rose Manor, Inc., which will represent the interests of ... [Defendant] McDaniel,

13   [Defendant] Callaham ... [Plaintiff] Astiazaran ..." and others in accordance with their percentages

14   of ownership.  McDaniel, Callaham, and Astiazaran were individually each assigned a 26%

15   ownership interest in the property.  The Agreement provides that "Rose Manor, Inc. agrees to make

16   the existing loan payments and any taxes which may become due for the ...[designated] owners of

17   the property."  The Agreement further provides that the property will remain in the name of Rose

18   Manor, Inc. in order to avoid the excise transfer tax," and also provides, "Rose Manor, Inc. shall

19   have the right to use the percentage of equity held by [McDaniel and Callaham] in the Battleground

20   Property as collateral in other projects in order to facilitate making the current loan payments."

21        The Agreement provides that the property will be sold when 51% of the ownership interests

22   agree to sell the property.  The Agreement provides that upon the sale of the property and the

23   payment of closing fees, commissions and taxes associated with the sale, Astiazaran will receive

24   25.5% of the proceeds.  The remaining proceeds are then used to reimburse Rose Manor, Inc. for

25   loan payments, and then divided among the other partners according to their respective shares.

26   ORDER - 2

1    The final provision of the Agreement provides that, "No party to this Partnership Agreement

2    has the right to any other legal recourse with the exception of their percentage of ownership which

3    will become due upon the sale of the property."

4    On March 27, 2002, Astiazaran assigned to Plaintiff Plascencia a 25.5% undivided interest

5    in the Battleground Property in exchange for the payoff of a $500,000 loan made by Plascencia to

6    Astiazaran.  Rose Manor, Inc. and Callaham were sent notification of the assignment of 25.5%

7    interest in the Battleground property to Plasencia.  McDaniel, acting as President of Rose Manor

8    Properties, Inc. objected to the assignment, informing Plasencia that Astiazaran had outstanding

9    obligations owed to Kalm Group Holdings and Rose Manor Properties, Inc. that were required to be

10   met or Astiazaran would have to forfeit his interest in the Battleground property.

11   As a result of the purported rejection of the assignment, Astiazaran brought claims against

12   the Defendants and others in the U.S. District Court for the District of Nevada.  Ultimately, a

13   settlement agreement was executed on July 30, 2002.  Pursuant to the Settlement Agreement,

14   Defendants fully recognized and acknowledged the valid assignment between Astiazaran and

15   Plascencia.  Specifically, the Settlement Agreement provides that McDaniel, Callaham, and Rose

16   Manor agree not to interfere in any manner with the ownership rights of Gabriel M. Plascencia in his

17   26% interest in the Battleground property owned by Rose Manor, Inc., which entitled him to 25.5%

18   of the proceeds of any sale of the Battleground property pursuant to the terms of the Partnership

19   Agreement.  The Settlement Agreement was signed by McDaniel and Callaham individually and by

20   McDaniel on behalf of Rose Manor, Inc.

21   In November 2002, another entity, Rose Manor Properties, Inc. obtained a loan for

22   $1,750,000 from Triangle Holdings II, LLC.  Rose Manor Properties, Inc. executed a deed of trust

23   on the Battleground property as security for the loan.  Defendants assert that this loan paid off an

24   existing loan against the Battleground property and provided additional funds for development of

25   the property.

26   ORDER - 3

1    Rose Manor Properties, Inc. failed to make payments on the loan and Triangle Holdings

2    declared default.  A Judgment was entered in Clark County Superior Court in favor of Triangle

3    Holdings and against Callaham and Rose Manor Properties, Inc.   Triangle Holdings put the

4    property into foreclosure.  Triangle Holdings then sold the property at a sheriff's sale to an

5    unrelated entity.  Neither Astiazaran or Plascencia  received any notification from Callaham,

6    McDaniel, or Rose Manor Properties, Inc. of the failure to make the necessary loan and tax

7    payments, the foreclosure on the loan, or the sheriffs sale.  By July 8, 2005, Rose Manor Properties,

8    Inc. ceased doing business and was administratively dissolved.  Rose Manor, Inc was dissolved in

9    August. 2008.

10    Plaintiffs assert that due to the actions of Defendants, they lost their ownership interest in

11    the Battleground Property and the proceeds of the expected sale.  Plaintiffs filed this action to

12    recover their expectation interest under the Partnership Agreement.

13    Defendants have moved for summary judgment claiming (1) Plaintiff Astiazaran has no

14    standing to bring or maintain this action as he has assigned all his rights concerning this matter to

15    Plascencia; (2) the parties' agreement contains an exclusive remedy provision, and that remedy is

16    not recoverable by  Plascencia; (3) Plascencia has no fiduciary duty claim against Callaham because

17    Callaham assumed no fiduciary duties in the Partnership Agreement; (4) Plascencia is not a party to

18    the settlement agreement and cannot pursue a claim based upon its alleged breach; and (5) Plaintiffs

19    have no evidence to support their claim for piercing of the corporate veil.

20                                **Summary Judgment Standards**

21    A party is entitled to summary judgment if that party can demonstrate "that there is no

22    genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

23    of law."  Fed. R. Civ. P. 56(c).  A party is entitled to summary judgment where the documentary

24    evidence produced by the parties permits only one conclusion.  Anderson v. Liberty Lobby, Inc.,

25    477 U.S. 242, 251 (1986).

26    ORDER - 4

1    The party seeking summary judgment bears the initial burden of informing the court of the

2 basis of its motion and identifying those portions of the pleadings, depositions, answers to

3 interrogatories, and admissions on file, together with the affidavits, if any, that it believes

4 demonstrate the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S.

5 317, 323 (1986).

6    Where the moving party has met its initial burden with a properly supported motion, the

7 party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but ...

8 must set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at

9 248.  The non-moving party may do this by use of affidavits, depositions, answers to

10 interrogatories, and admissions.  Id.  Only disputes over facts that might affect the outcome of the

11 suit under the governing law are "material" and will properly preclude entry of summary judgment.

12 Anderson, 477 U.S. at 248.

13    At the summary judgment stage, the judge's function is not to weigh the evidence or

14 determine the truth of the matter, but to determine whether there is a genuine issue for trial.

15 Anderson, 477 U.S. at 249-50.

16                          **Standing to Maintain Suit**

17    Defendants argue that Astiazaran "assigned to Plascencia all of his rights and interests" in

18 the Partnership Agreement and Battleground property and no longer has standing to sue, and that as

19 a result, any claims which Astiazaran may have had against Defendants now belong solely to

20 Plascencia.

21    The Plaintiffs counter that Astiazaran only assigned to Plascencia a partial interest in the

22 property.  Astiazaran held a 26% ownership interest in the Battleground Property.  He assigned to

23 Plascencia a 25.5% interest (the amount for which Astiazaran was entitled to recover once the

24 property sold).  Accordingly, Astiazaran maintained a .5% interest in the property, which entitles

25 him to sue to protect that interest.

26
ORDER - 5

1   There exists a genuine issue of material fact precluding summary judgment.  There is

2   credible evidence that Plaintiff Astiazaran retained an interest in the Partnership Agreement and

3   Battleground property upon the assignment of a partial interest to Plascencia.  The motion for

4   summary judgment on the claim of lack of standing is **DENIED**.

5                           **Exclusive Remedy of Partnership Agreement**

6        The Defendants assert the parties to the Partnership Agreement waived any and all legal

7   claims against one another, proceeding on the express understanding that their only potential legal

8   remedy would be to receive their percentage of the sale proceeds if and when the property sold.

9   The language of the subject provision reads as follows:

10       No party to this Partnership Agreement has the right to any other legal recourse with the
         exception of their percentage of ownership which will become due upon the sale of the
11       property.

12       Defendants assert that this language provides the exclusive remedy and there being no sale of the

13   property, the Plaintiffs have no legal recourse against Defendants.

14       The Plaintiffs contend that the provision merely limits the parties' recovery upon the sale of the

15   property.  A party's recovery for breach, therefore, is limited to the amount that party would have

16   recovered upon the sale.  That is, the parties are limited to their expectation interest under the contract.

17   Nowhere does the provision purport to limit the parties' right to bring legal action to enforce the

18   contract.

19       As noted by the Plaintiffs,  under the interpretation posed by the Defendants, other than failing

20   to provide payment according to the ownership interests on the sale of the property, this exclusivity

21   provision would foreclose any legal action for any breach of the Partnership Agreement.

22       The Court finds that the provision at issue merely limits the Plaintiffs' recovery to the

23   percentage of ownership determined by the amount that would have been recovered upon a sale of the

24   property.  The motion for summary judgment on the issue of exclusivity of remedy is **DENIED**.

25

26   ORDER - 6

1

**Fiduciary Duty**

2      Plaintiffs' breach of fiduciary duty claim is premised upon the allegations that loan and tax

3   payments were not made, without notice to Plaintiffs, thereby allowing the property to be foreclosed and

4   sold.  Defendants assert that Callaham was not required to perform any obligations under the Partnership

5   Agreement.  Defendants claim that the only party with any obligations to take affirmative actions on

6   behalf of the partnership is Rose Manor, Inc.  The Partnership Agreement provided that Rose Manor,

7   Inc. would represent the interests of the six individual partners.  Rose Manor, Inc. was to make the loan

8   payments and tax payments.  The property was to remain titled in the name of Rose Manor , Inc. Thus,

9   Defendants assert that Callaham owed no fiduciary duties to the other partners.

10      The Kalm Group returned the Battleground Property to Rose Manor Properties, Inc.  Whereas,

11   the Partnership Agreement for the sale of the property stated that the Battleground Property would be

12   retained in the name of Rose Manor, Inc.  The principals of Rose Manor Properties, Inc. are Defendants

13   Callaham and McDaniel.  The record reflects that McDaniel held himself out as President of Rose

14   Manor Properties and that Callaham had the authority to conduct business on behalf of Rose Manor

15   Properties, Inc.  It is also evident that both Callaham and Rose Manor Properties, Inc are judgment

16   debtors on the Triangle Holdings judgment.  Although Callaham denies being a principal of Rose

17   Manor, Inc., it remains  unclear what relationship McDaniel, Callaham and Rose Manor Properties, Inc.

18   had with Rose Manor, Inc.  The record reflects that the Battleground property was transferred from

19   Kalm Group to Rose Manor Properties, yet the Partnership Agreement placed the property in Rose

20   Manor, Inc. and permitted Rose Manor, Inc. to use McDaniel and Callaham's ownership interest as

21   collateral in other projects in order to facilitate making the current loan payments.

22      Because a corporation can only act through its agents, Rose Manor Properties, Inc.'s fiduciary

23   duty can only be carried out through its agents. There is a question of fact regarding whether Callaham

24   breached this fiduciary duty by failing to take action on behalf of Rose Manor Property, Inc.

25

26   ORDER - 7

Defendants argue that because Rose Manor Properties, Inc. never signed the Partnership Agreement, it cannot be bound by its terms such that it became a fiduciary.

There is a question of fact as to whether the signatures of Callaham and McDaniel operate to acknowledge and accept the terms of the Partnership Agreement on behalf of Rose Manor Properties, Inc.  There is evidence an of acquiescence on the part of Rose Manor Properties, Inc. to the terms of the Partnership Agreement.

Under Washington's Revised Uniform Partnership Act, partners owe one another fiduciary duties of loyalty and care.  RCW 25.05.165(1).  These duties include the duty to account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property, including the appropriation of a partnership opportunity.  RCW 25.05.165(2).

There is a question of fact regarding whether Callaham breached his fiduciary duties to the partnership when he failed to disclose the terms of the loan made with Triangle Holdings, that a deed of trust was taken on the Battleground Property to secure the loan, that loan payments were not made, that a default was taken, that a judgment was entered against Rose Manor Properties, and that the Battleground property was subject to a sheriff's sale.  Defendants' motion for summary judgment on the basis of lack of fiduciary duty is **DENIED.**

### Breach of Settlement Agreement

Defendants assert that Plascencia cannot assert a breach of the Nevada lawsuit Settlement Agreement as he was not a signator to the settlement.  They also contend that there was a lack of consideration.

The Settlement Agreement provides that Callaham and Rose Manor, Inc. shall not interfere with Plascencia's rights in the Battle Ground property, as described in the partnership agreement.

ORDER - 8

The Settlement Agreement was effectuated by Astiazaran, in part, to perfect and assure the assignment of his Partnership and ownership interest in the Battleground property to Plascencia. Plascencia is a third party beneficiary to the Settlement Agreement. He is also a direct beneficiary and entitled to enforce the Settlement Agreement.  See Coast Trading Co., Inc. v. Parmac, Inc., 21 Wn. App. 896,903,587 P.2d 1071 (1978).

The allegation of a lack of consideration to support the Settlement Agreement is without merit. Plaintiffs have set forth instances of valid consideration that support the enforceability of the Settlement Agreement.  Further, by the terms of the Settlement Agreement, the Defendants acknowledged that "in consideration of the covenants and agreements set forth and for other good and valuable consideration," the parties agree to the terms of the agreement.

Defendants' motion for summary judgment on the basis of the unenforeability of the Settlement Agreement is **DENIED**.

### Piercing the Corporate Veil

The Defendants contend that the Plaintiffs have no admissible evidence to create a genuine issue of material fact on the issue of whether Defendants commingle assets so as to justify piercing the corporate veil.

In general, to pierce the corporate veil a plaintiff must show that the corporate form was used to violate or evade a duty and that the corporate veil must be disregarded in order to prevent loss to an innocent party.  Wash. Water Jet Workers Ass'n v. Yarbrough, 151 Wn.2d 470, 503, 90 P.3d 42 (2004); Meisel v. M & N Modern Hydraulic Press Co., 97 Wn.2d 403, 409, 645 P.2d 689 (1982).

To pierce the corporate veil, two separate, essential factors must be established.  First, the corporate form must be intentionally used to violate or evade a duty.  Second, the fact finder must establish that disregarding the corporate veil is necessary and required to prevent an unjustified loss to the injured party.  Meisel, at 410.  With regard to the fist element, the court must find an abuse of the

corporate form. Such abuse typically involves fraud, misrepresentation, or some form of manipulation of the corporation to the stockholder's benefit and creditor's detriment. With regard to the second element, wrongful corporate activities must actually harm the party seeking relief so that disregard is necessary. Id.

Applying the test, the Court finds there are genuine issues of material fact precluding dismissal of the piercing claim. Abuse of the corporate form may include: (1) the diversion of assets from one corporation to another entity; and (2) the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another. See Meisel, at 409-10. Here, there is evidence that the corporation may have been manipulated to benefit Callaham and McDaniel to the detriment of Plaintiffs. For example, there is evidence that the Defendants may have used corporate property as collateral on projects that did not benefit the corporation, ultimately resulting in the loss of the corporate property and damage to Plaintiffs. Since the corporation is now defunct, disregard of the corporate entity may be appropriate to prevent the Plaintiffs' alleged loss.

Defendants' motion for summary judgment on the issue of piercing the corporate veil is **DENIED**.

### Conclusion

For the above stated reasons, Defendants' motion for summary judgment is denied. Genuine issues of material fact preclude summary judgment on the issues raised by Defendants.

ACCORDINGLY;

IT IS ORDERED:

Defendants' Motion for Summary Judgment [Dkt. 34] is **DENIED**.

DATED this 14th day of June, 2010.

Robert J. Bryan
United States District Judge

ORDER - 10